# THE CLARENDON LAND INVESTMENT AND AGENCY COMPANY (LIMITED) v. McCLELLAND BROS.

### No. 351.—Decided April 30, 1896.

**1. Case Adhered to—Owners of Live Stock—Pasture Fenced.**

Clarendon Land Investment and Agency Company v. McClelland Bros., 86 Texas,
179, adhered to; duties and rights of owners of live stock in relation to owners of
inclosed pasture lands.

**2. Charge—Imperfect Fences—Owners of Live Stock.**

In suit by the owner of a pasture for damages from diseased cattle escaping
from an adjoining pasture into that of the plaintiff, it was error to instruct the
jury to the effect that if the fence around plaintiff's land was not sufficient to keep
out cattle of ordinary disposition as to fence-breaking, and if the owner of the cat-
tle knew of the defects in the fence, he would be liable for damages occasioned to
plaintiff's cattle by reason of defendant's cattle passing the defective fence.

**3. Same—Same—Disease Communicated.**

So it was error in such case to instruct the jury to the effect "that if the
plaintiffs had a fence around their pasture sufficient to exclude therefrom cattle
of the kind owned by plaintiffs, of ordinary disposition as to fence-breaking, and if
the defendant's cattle were breachy in character and by reason of such character
entered the enclosure of the plaintiffs and thereby communicated disease to the
plaintiff's cattle, the defendant would be liable for such damages, although it
(the defendant) neither knew of the disposition of its cattle to break the fences,
nor their liability to communicate disease to the plaintiff's cattle.

4. **Cattle Diseases—Judicial Knowledge.**

It cannot be assumed as matter of law that stock cattle driven from one section of the State to another are liable to communicate any disease to cattle in the section to which they are driven. It was error to so charge the jury. This would be a matter of proof to be found by the jury as a fact.

5. **Burden of Proof.**

Plaintiff seeking damages from the communication of disease to his cattle in a pasture by defendant's cattle breaking into such pasture through a fence, must prove that his fence was reasonably sufficient. It was error to charge that it was incumbent upon the defendant to prove that the fence was insufficient.

6. **Care by Owner of Pasture.**

It is the duty of the owner of lands used for pasturing stock thereon to enclose such lands with a fence sufficient to exclude therefrom cattle of all sizes and kinds, of ordinary disposition as to breaking fences; unless the lands are so enclosed, plaintiff cannot recover for any damage occasioned by the entry of defendant's cattle (from an adjoining pasture) because the entry and damages would be the result of plaintiff's own negligence.

7. **Liability from Breachy Cattle.**

If the fences around plaintiffs' lands used for pasturage were sufficient to turn cattle of ordinary disposition, and defendant's cattle were, to an extent more than usual with such stock, disposed to break through fences, and by reason of that disposition the cattle broke into plaintiffs' enclosure, defendant would be liable for such damages as would usually arise from such trespass.

8. **Notice by Owner of Cattle.**

If, however, defendant did not know or have notice of the breachy character of the cattle, nor of their diseased condition, it would not be liable for the damages either from the trespass or the effects of the disease communicated by the cattle of defendant to those of the plaintiff.

9. **Diseased Cattle.**

It was lawful for defendant to keep its cattle in its own pasture even if known to be diseased; and it would not be liable for injury imparted to cattle in an adjoining pasture unless negligent in the manner of keeping them.

ON MOTION FOR RE-HEARING.

10. **Inclosed Pasture Lands—Extent of Rule.**

The law upon the rights and duties of owners of inclosed lands against owners of live stock running at large applies to all portions of the State alike, and to all interests of the different classes of citizens whether they be in one part or another of its territory. The same rule applies to grazing as to agricultural lands inclosed.

11. **Inclosed Lands—Stock Running at Large.**

In this State the rule at common law, as to rights of owners of live stock as against owners of inclosed lands, is reversed, and the burden rests upon the land owner to exclude from his land the stock of other persons by a fence sufficient to prevent entry thereon by all stock not of a fence-breaking or breachy disposition.

12. **Communicating Disease to Stock—Negligence.**

Liability for the results of disease communicated to the cattle of another would depend upon whether or not the owner of the cattle communicating the disease knew of the existence of the disease or of its infectious character. And this liability is upon the ground that it would be negligence in the owner to so keep diseased stock that they might communicate the disease to the cattle of his neighbor. Negligence is not presumed from permitting such cattle to run at large or upon land of their owner unless the diseased condition be known to the owner.

ERROR to Court of Civil Appeals for Second District, in an appeal from Donley County.

Suit by McClelland Bros. against the Clarendon Land etc. Co. to recover as damages the value of cattle which died and depreciation in value of others which sickened from "Texas fever" communicated to them by

the cattle of defendant, which had broken into plaintiff's pasture. Plaintiffs had verdict and judgment which was affirmed in the Court of Civil Appeals on an appeal by defendant company which now prosecutes writ of error. The case on former writ of error in an appeal from a previous recovery is reported in 86 Texas, 179.

*Matlock & Boyce,* for plaintiff in error.—The owner of ordinary cattle that are not breachy is not responsible in damages for trespass committed by them on the lands of another, unless said trespass is committed by entering the lands of another which are protected under the provision of article 2431-4609a of the Revised Statutes. If the owner of said premises has a fence alleged to be sufficient to keep out ordinary cattle and cattle do enter said premises he must show, before he can recover for such trespass, that said cattle were not ordinary animals of the class intended to be excluded by such enclosure, or that the animals so entering were of a breachy and fence-breaking character, and that the owner had knowledge of their breachy and fence-breaking character. If the animals are ordinary animals of the class intended to be excluded, which means animals that are not of a breachy or fence-breaking character, then the owner of the land must fence at his peril against such stock, and if he does not build a fence sufficient to keep out that class of cattle, then, to recover, they must show the further fact that the cattle were of a breachy and fence-breaking character, and that said fact was known to the owner, and that he was guilty of negligence in the manner of keeping and handling the cattle. A person who builds a fence, which is not a statutory fence, around his premises, that is, not sufficient to exclude all ordinary animals of the class intended to be excluded, is guilty of negligence and has no cause of action against the owner of such animals for trespassing on his premises.

*Browning & Madden,* for defendants in error.—If the owner knows or reasonably could have known that his cattle are breachy, vicious or liable to communicate disease to those of another, he must confine them and prevent their doing damage to another, either upon the open range or upon his imperfectly inclosed lands; and if he fails to do so he is guilty of negligence and is liable for the damages thus inflicted. This, it is likewise held, begets the corresponding, relative, conditional duty (not an unqualified statutory obligation) upon every land owner, if he desires to exclude such cattle from his lands, to enclose the same with a fence reasonably and sufficiently good and perfect to exclude all animals of an ordinary disposition as to fence breaking, of the class and kind desired to be excluded; and when he has so done, each animal of such class and kind that breaks through his fence and goes within his said inclosure is a trespasser upon his lands and unlawfully and wrongfully there; and the owner of such animal is liable for all damages done by it while so trespassing, regardless of whether or not he knew of its breachy, vicious, or diseased qualities, because, as against his neighbor inclosing his lands with

such sufficient fence, it was the duty of the owner of the animal to know of its qualities before turning it out, and not so knowing was actionable negligence towards such neighbor.    Walker v. Herron, 22 Texas, 55; Pace v. Potter, 85 Texas, 473; Davis v. Davis, 70 Texas, 123; Clarendon Co. v. McClelland Bros., 86 Texas, 179; Scott v. Grover, 56 Vt., 499; s. c., 48 Am. Rep., 814; Decker v. Gammon, 44 Me., 322; s. c., 69 Am. Dec., 99; Dunckle v. Kocker, 11 Barb., 387; Chunot v. Larson, 43 Wis., 536; s. c., 28 Am. Rep., 567; Angus v. Radin, 2 Southard, 815; s. c., 8 Am. Dec., 626; VanLeuven v. Lyke, 1 N. Y., 515; s. c., 49 Am. Dec., 346; Note to Railway v. Munger, 49 Am. Dec., 257; 1 Thompson on Neg., 206, sec. 21; Cooley on Torts (2d Ed.), 400, and foot note 2.

BROWN, Associate Justice.—McClelland Brothers, the defendants in error, owned a pasture in Donley County, consisting of about 2000 acres of land, which was enclosed by a wire fence on cedar posts.    The fence, however, was not a lawful fence under the law of this State as applicable to cultivated lands.    In the pasture they had cattle of the short-horn, Jersey, and Holstein breeds, consisting of full bloods and grades of those breeds.

The plaintiff in error—a corporation organized under the laws of Great Britain—owned lands in the same county, which entirely surrounded that of McClelland Brothers, and which lands the plaintiff in error enclosed for the purpose of pasturing cattle thereon.    In the year 1889, the corporation bought about 4000 head of yearlings—called by the witnesses "dogies"—in Tarrant and other counties east of that, which were placed in the pasture of the corporation.    Some of the yearlings passed out of the pasture of the plaintiff in error into that of the defendants in error at different times during that year.    After the yearlings were in the pasture of the defendants in error, a number of their fine cattle died from a disease called "Texas fever," but it does not appear from the evidence that the yearlings had the disease at the time.

McClelland Brothers sued the corporation for the value of the cattle that died and for damages to others that had the fever but did not die, charging that the yearlings of the plaintiff in error were of a breachy character and that they were liable to communicate the Texas fever to the cattle of the plaintiff, all of which was alleged to be known to the said corporation or its agents.

The corporation answered by general denial and by special plea to the effect that the plaintiffs' fence was insufficient to turn the cattle of the said corporation, and that the plaintiffs therein were guilty of negligence in not keeping their fence in proper repair.    It also denied that the said cattle were breachy in character or liable to communicate any disease to the plaintiffs' cattle, but if such were the fact, then it alleged that it did not know of such fact.

Trial was had before a jury, which resulted in a verdict and judgment for the plaintiffs, McClelland Bros., for $1748.36, which judgment was affirmed by the Court of Civil Appeals.

This case was before this court on writ of error granted to a judgment rendered by the Court of Civil Appeals affirming a judgment of the District Court at a former trial. The report of the case as decided in this court will be found in 86 Texas, on page 179. By the opinion of the court, by Justice Gaines, these propositions of law are clearly announced:

1. That the common law rule which required every man to restrain his cattle either by tethering or by enclosure is not in force in this State, and that every owner of land in this State, who desires to exclude therefrom cattle running at large or in an adjoining pasture, situated as these pastures were, must throw around his own land an enclosure sufficient to exclude all animals of the class intended to be excluded, of ordinary disposition as to breaking fences or enclosures.

2. It is the right of every owner of domestic animals which are not known to him to be vicious, mischievous, or diseased, to allow them to run at large or to occupy his own enclosed lands when adjoining those of another.

3. If the owners of land have around it a fence sufficient to turn cattle of all sizes and kinds of ordinary disposition as to breaking fences, and the enclosure is entered by cattle which are known to the owners to be vicious, in the sense that they have the habit of breaking into enclosures when the same class of cattle would not ordinarily do so, the owner of such cattle would be liable for such damages thereby occasioned as would ordinarily result from such trespass, and if, in addition to the known habits of fence-breaking, the owner knows or has reason to believe that such cattle would be liable to communicate an infectious disease to others upon coming in contact with them, the owner would be liable, in case of trespass by such cattle by breaking such fence, for the damage occasioned by the communication of such infectious or contagious disease to the cattle belonging to the owner of the enclosure so broken.

Upon the second trial of this case in the District Court, the judge gave charges which are deemed to be in conflict with the rules of law announced in the former opinion, of which charges plaintiff in error complains in its application for writ of error herein.

We think the use of the word "ordinary" in its connection with other language in the third charge as given by the court was calculated to mislead the jury, yet, if the defendant desired it explained, it should have asked a proper charge upon the subject. The second special charge requested by the defendant and refused by the court was properly refused because it assumed that the plaintiffs' fence was defective and no other charge was asked which tended to explain the word "ordinary," as used in the third paragraph of the charge of the court.

The second charge given by the trial court reads as follows: "You are instructed, under the law applicable to this case, that if the cattle of one person wander from the owner's range or pasture upon the unenclosed or imperfectly enclosed lands of another, they are not trespassers and the owner is not liable for any damage they may inflict, unless such owner knew that the cattle could pass through such enclosure and that they

were likely to communicate disease to the cattle of the person whose enclosure they might enter."

The same proposition is announced in the fifth and sixth charges of the court, which make an application of the principle announced in the second charge to the particular facts of the case. The effect of these charges was to instruct the jury that if the plaintiff's lands were imperfectly enclosed—that is, if the fence around them was not sufficient to keep out cattle of ordinary disposition as to fence breaking—and if the owner of the cattle knew that the fence was imperfectly constructed, then the owner of such cattle would be liable for damages, which might be occasioned to the plaintiffs' cattle by reason of their passing through the imperfect fence of the plaintiff. In other words, a man who owns land and has around it a fence which is insufficient to exclude from his premises the cattle of his neighbors, can, by giving notice to such neighbors of the imperfect condition of his own fence, cast upon them the burden of restraining their stock from running at large upon the range, or, as in this case, from permitting the cattle to occupy the pasture lands of the defendant, and render the defendant in this case liable for damages which might have been committed upon the plaintiff's land by reason of the defective condition of the plaintiff's fence because of the fact that the owner of the cattle had notice of the defects in the fence. If such a proposition were correct, as a matter of law, then it would change the rule as announced in the opinion of this court, which is well sustained by authorities in this State, to the effect that the owner of cattle may permit them to run at large without restraint and that it devolved upon the owner of other land to exclude them by a sufficient fence thrown around such lands. Under this rule thus announced by the court below the plaintiffs might be permitted to avoid the consequences of their own negligence in failing to erect a proper fence, and visit the consequences of that negligence upon the defendant simply because it had notice of the bad condition of their fence. The proposition does not admit of argument; it is too plainly contrary to the law to require argument to refute it.

The third charge as given by the trial court reads as follows: "The owner, however, of a pasture which has an enclosure sufficient to prevent the entry of all ordinary animals of the class intended to be excluded, is entitled to recover damages from the owner of stock running at large upon the adjacent range or pasture that forcibly break through such enclosure, if such stock are of the class intended to be excluded and the entry would not have been made but for the vicious, breachy, or fence-breaking character of such animals, or when such stock by their entry communicated disease or otherwise damaged stock of the owner of the enclosure; and in such case, the owner of the enclosure would be entitled to recover the damages so sustained by him, notwithstanding the owner of the stock so trespassing may not have known of the breachy or fence-breaking character of the stock, and their liability to communicate disease."

This charge is in substance repeated in the seventh charge given by the

court, and is therein applied to the facts of this case. In effect, the court charges the jury that if the plaintiffs had a fence around their pasture sufficient to turn or exclude therefrom cattle of the kind owned by the plaintiff, of ordinary disposition as to fence-breaking, and if the defendant's cattle were vicious and breachy or fence-breaking in character, and by reason of such character entered the enclosure of the plaintiff and thereby communicated disease to the plaintiff's cattle, the defendant would be liable for such damages, although it neither knew of the disposition of its cattle to break the fences or their liability to communicate disease to the plaintiff's cattle. This proposition is in direct conflict with the former opinion of this court, in which it was said: "It is the right of every owner of domestic animals in this State not known to be diseased, vicious or breachy, to allow them to run at large, and this without reference to the size or class of such animals kept by others in the same neighborhood. For these reasons we think there was error in the charge complained of, for which the judgment must be reversed." We cannot conceive of language which would more definitely express a proposition of law at variance with the charge as given by the court than that quoted above. If the owner of the stock in this case had permitted them to run at large upon his lands and such lands had been unenclosed, instead of being enclosed, as they were, then under the proposition stated in the opinion as quoted above, in order to render it liable for damages on account of their breaking through the enclosure of the plaintiffs, it would be necessary for the plaintiffs to show that the defendant knew or had reason to believe that such cattle were vicious or breachy, and were liable to communicate the disease to plaintiff's cattle. Under the charge given by the court, all that was necessary for the plaintiffs to prove, in order to establish their right, was, that they had a fence sufficient to turn cattle of the kind owned by the defendant, if they were of ordinary disposition and that defendant's cattle were breachy, which would cast upon the defendant liability for the result of such breaking, whether it knew of such habits or the existence of the disease communicated or not.

In the fifth charge the court, in effect, instructed the jury that if the defendant had reason to believe that its cattle were liable to communicate disease to the plaintiff's cattle from the fact that they were driven from a certain locality, then the defendant would be liable for the result of their communicating such disease. At the time of this transaction, there was no law which forbade persons to drive cattle from one portion of the State to another, and we do not believe that it can be assumed as a matter of law that the cattle driven from one section of the State to another are liable to communicate any disease to cattle in the section to which they are driven. This would be a matter of proof, and the question as to whether the locality from which they were driven would operate as notice to the persons buying and driving them of their liability to communicate such disease, would depend upon the evidence as to whether or not the facts known to defendant were such as to have the effect of notice, or whether it was known as a fact by the persons so purchasing and driv-

ing them.   This part of the charge, we think, was upon the weight of the evidence, and should not have been given.

The eighth charge given by the court is not complained of in this court, but in view of the fact that this case must be reversed, we deem it proper to call attention thereto, in order that it may not be again repeated and furnish ground for complaint in the future.   It is as follows: "If you find from the evidence that the cattle of the defendant company did enter the enclosure of the plaintiff and did communicate the disease to plaintiff's cattle, in order to excuse the defendant on account of the negligence or carelessness of the plaintiffs in permitting their enclosure to remain in a defective condition, or their gates to be left open, it is incumbent upon the defendant, upon this issue, to establish such negligence on the part of the plaintiff by a preponderance of the testimony upon said issue and show that said negligence on the part of the plaintiff was the cause of the damage, if any, resulting to the plaintiffs."   This cast upon the defendant the burden of showing that the fence of the plaintiff, was in a defective condition when entered by the defendant's cattle, whereas the plaintiffs' right of action depends upon the fact that they had a fence sufficient to turn cattle of ordinary disposition, and that the defendant's cattle were of a vicious or breachy character and so known to be by the defendant.   The burden of proof was upon the plaintiffs to establish their case throughout and did not shift to the defendant under any circumstances, and the above charge which has the effect to cast the burden upon the defendant was improperly given by the court.

It was the duty of the plaintiffs under the facts of this case, to enclose their lands with a fence sufficient to exclude therefrom cattle of all sizes and kinds, of ordinary disposition as to breaking fences, and if they did not have such a fence they cannot recover for any damages occasioned by the entry of defendant's cattle upon their land, because the entry and the damages would be the result of their own negligence.   Scott v. Grover, 56 Vt., 499.   If the plaintiffs' fence were sufficient to turn cattle of ordinary disposition and defendant's cattle were, to an extent more than usual with such stock, disposed to break through fences, if this was known to the defendant or its servants, and by reason of that disposition the cattle broke into plaintiffs' enclosure, defendant would be liable for such damages as would usually arise from such trespass, and if the defendant's cattle so entering were liable to impart to others a disease by contact and association with them, and defendant knew this or had good reason to believe it to be true, then it would be liable for the effects of such disease, if communicated by its cattle entering the plaintiffs' pasture, under the circumstances stated.

If, however, the defendant did not know of the vicious or fence-breaking character of its cattle, and had no knowledge of circumstances sufficient to charge it with notice thereof, it would not be liable for damages occasioned by such an entry into the plaintiffs' land.   Groom v. Lawyer, 13 Johns., 339; Van Leuven v. Lyke, 1 N. Y., 515.   If the defendant

knew that its cattle were unusually disposed to break fences, but did not know and had no good reason to believe that they were liable to communicate disease to others, it would not be responsible for the effect of such disease actually imparted to the plaintiffs' cattle by such a breaking of their fence.   Cooley on Torts, 403; Coyle v. Conway, 35 Mo. App. Rep., 490; Patee v. Adams, 37 Kan., 133.

Mr. Cooley, in his work on Torts, in treating of this subject, says: "But there are other mischiefs which may be committed by domestic animals that one is under no obligation to anticipate and guard against, because they are not the result of a general propensity, but are committed, if at all, by exceptionally vicious individuals of the particular species of animals.   Thus, though every horse will roam into neighboring fields if not restrained from doing so, it is only in rare and exceptional cases that a horse will attack and injure those who come near him. Therefore, while the owner should anticipate and protect against trespasses on lands by his horses, he is under no moral obligation to anticipate that a horse in which no such disposition has been discovered will suddenly make an assault upon and kick and bite some passer-by who chances to come within his reach.   For this reason the keeper of a domestic animal is not in general responsible for any mischief that may be done by such animal which was of a kind not to be expected from him, and which it would not be negligence in the keeper to fail to guard against."

We are aware that Mr. Thompson, in his work on Negligence, vol. 1, p. 206, sec. 21, and Shearman and Redfield, in their work on the same subject, sec. 633, assert the contrary doctrine as to diseased stock, and there are cases in the reports of some states to the same effect, but we believe that the doctrine announced by Mr. Cooley is supported by the better reason.   The cases of Coyle v. Conway and Patee v. Adams, cited above, bear more directly upon this question, involving the liability of the owner for the communication of the same character of disease as in this case.

It was lawful for defendant to place its cattle in its own pasture, even if known to be diseased, and it would not be liable unless negligent in the manner of keeping them.   Fisher v. Clark, 41 Barb., 329; Walker v. Herron, 22 Texas, 55; 1 Am. and Eng. Ency. of Law, 585.

We can see no reason why the owner of stock afflicted with an unknown latent disease should be liable for its communication to others any more than if the same animal had an unknown vicious habit which caused an injury.   The ground of liability is that the party to be charged has been guilty of negligence in permitting the animal diseased or of vicious habits to go upon the land of another party, and there to inflict an injury because the care to be exercised must be commensurate with the danger. If there be no knowledge of the existence of a disease, how could there be negligence in reference thereto?   If the negligence of permitting the horse to stray upon the land of another unlawfully will not render the owner liable for an injury inflicted by it while thus trespassing, because

of the fact that the vicious habits from which the injury arose are unknown to the owner, then how can it be said that the owner of the diseased animal which commits a like trespass is to be held liable for the damages arising from its diseased condition, when he knew nothing of that condition and was guilty of no negligence in reference thereto? We think the rule laid down by Mr. Cooley is applicable to both classes of cases and should govern in this case.

The District Court erred in giving the charges as hereinbefore indicated, and the Court of Civil Appeals erred in not sustaining the assignment of error thereto and reversing the judgment, for which reason the judgments of both the said courts are hereby reversed, and this cause is remanded for further trial in accordance with this and the former opinion of this court.

Delivered February 10, 1896.

*Reversed and remanded.*

### ON MOTION FOR RE-HEARING.

BROWN, ASSOCIATE JUSTICE.—Counsel for defendants in error have entered a vigorous and earnest protest against the conclusions announced by this court, in our opinion heretofore rendered in this case, and on account of the importance of the questions involved we have given more than usual time to a mature and thorough reconsideration of the opinion heretofore delivered, upon the points objected to in motion for rehearing.

Counsel announces that the rule laid down by this court will operate disastrously to certain portions of the State and to certain interests involved therein or affected thereby. The law upon this subject applies to all portions of the State alike and to all interests of the different classes of citizens, whether they be in one part or another of its territory. It has been held that the law of this State upon the subject of lawful fences does not apply to lands used for pasture purposes, but this does not make a distinction between agricultural lands located in the Panhandle or other grazing portions of the State and like lands located in the agricultural sections. If land be used in the grazing districts for agricultural purposes it must be enclosed by a fence such as is prescribed by the statute in order to enable the owner to recover damages for trespass committed by cattle or horses belonging to other persons. Likewise if lands in the agricultural section of the State be used for pasture purposes the rights of the owner must be governed by the same rule as the rights of like owners of land used for like purposes in any other part of the State. The courts cannot limit the operation of any decision announced to any particular district or country. It is within the power of the Legislature to so adjust the laws as to give them local effect upon these questions, and, if the law as it exists is inapplicable to any particular section, then the Legislature has the authority to so change the law as to adapt it to the best interests of the people living in such section, and we presume that it will be done whenever the necessity arises.

It is claimed on the part of the defendants in error that the charges asked by the plaintiff in error in the court below and refused by the trial judge embrace substantially the same proposition as those given by the court in its general charge to the jury. This is true as to some portions of the charge, but not as to others, and upon careful examination of those charges, we do not think that it can be properly said that the errors for which this judgment has been reversed can be attributed to the action of the defendant. The charge given by the judge who tried the case in the District Court is admirably framed to express his view of the law applicable to the facts, but we believe that the view presented by the charge of the court is not correct and that the error resulted from a misconception of the opinion delivered in this case when it was before this court at a former term. It is claimed that the opinion of the court as last rendered is in conflict with the opinion delivered upon a former hearing, but upon examination of both opinions we do not think that this criticism is justified. We will not, however, enter into a discussion of that matter on this motion.

It is claimed that the opinion now under review is erroneous in announcing these propositions:

First. "If plaintiffs' fence was sufficient to turn cattle of ordinary disposition and defendant's cattle were to an extent more than usual with such stock disposed to break through fences, if this was known to the defendant or its servants, and by reason of that disposition the cattle broke into plaintiffs' enclosure, defendant would be liable for such damage as would usually arise from such trespass, and if the defendant's cattle so entering were liable to impart to others a disease by contact and association with them and defendant knew this or had good reason to believe it true, then it would be liable for the effects of such disease, if communicated by its cattle entering the pasture under the circumstances stated. If, however, the defendant did not know of the vicious or fence-breaking character of its cattle and had no knowledge of circumstances sufficient to charge it with notice thereof, it would not be liable for damages occasioned by such an entry upon plaintiffs' land."

Second. "If the defendant knew that its cattle were unusually disposed to break fences, but did not know and had no good reason to believe that they were liable to impart disease to others, it would not be liable for the effect of such disease actually imparted to the plaintiffs' cattle by such a breaking of their fence."

As it has been before held by this court, the common law upon the subject under consideration is not in force in this State, and therefore the rules of law applied in determining the liability of the owner of stock for trespasses are inapplicable in this State. The common law rule is clearly stated by Shearman and Redfield on the Law of Negligence, section 627, as follows: "The owner of large animals (such as horses, oxen, sheep, etc.) is under an unqualified obligation at common law to restrain them from trespassing upon lands of other persons, and he is therefore unconditionally liable as a trespasser himself for any trespass committed

by his animate property. The law conclusively presumes negligence against him without regard to the facts of the particular case. Whatever damage his animal does while trespassing is an aggravation of the trespass for which he is also liable." Thus the failure to perform the duty of restraining horses, cattle or sheep by the owner, under the common law, constituted upon his part negligence which, in contemplation of law, made him a trespasser by reason of the act of such stock in entering upon the lands of another. The liability is placed distinctly upon the ground that the negligence is conclusively presumed from a failure to obey the requirements of the law.

In this State the rule is reversed and the burden rests upon the land owner to exclude from his land the stock of other persons by throwing around such land a fence sufficient to prevent entry thereon by all such stock not of a fence-breaking or vicious disposition. In the opinion delivered by Chief Justice Gaines on a former hearing it is said: "It is a right of every owner of domestic animals in this State, not known to be diseased, vicious or breachy, to allow them to run at large, and this without reference to the size or class of such animals kept by others in the same neighborhood. * * * If the agents of the defendant corporation knew that their calves could pass through the plaintiffs' enclosure and that they were likely to communicate disease to the latter's cattle, it was negligence on his part not to confine them, and for the consequences of that negligence it would be liable." Again in the same opinion it is said: "We do not hold that for no breach of its fence and invasion of its pasture by domestic animals could a land owner recover under our law. It may be admitted that if his enclosure be sufficient to exclude all cattle of an ordinary disposition he would have the right to recover for the trespass of such as were peculiarly vicious and prone to break fences. The owner of a dog may as a general rule permit him with impunity to run at large, but if he knows him to be vicious and does not restrain him, he is liable for any injury he may inflict upon the person or property; and it would seem that the same principle should apply to the owner of any domestic animal known to him as being accustomed to break through an ordinary good and sufficient fence."

From these quotations we think that it is clear that the court distinctly held, in its former opinion quoted from, that the owner of cattle had a right to permit them to run at large upon the open range or upon his own enclosed lands, unless they were known to be breachy or fence-breaking, vicious or diseased, and that it was the duty of the land owner to exclude such stock from his land by a sufficient fence for that purpose, and also, if such stock should make an entry into the lands of another enclosed by a fence sufficient to turn ordinary stock, the owner of the stock would be liable for such trespass, if he knew that they were of a disposition to break fences and enter enclosures not common to that class of cattle. The liability upon the stock owner having such notice would be for such damages as that character of animal might be expected to commit by entering upon the land of another, but in the lan-

guage quoted herein from the opinion on former hearing it is distinctly stated that the liability for the results of disease communicated to the cattle of another would depend upon whether or not the owner of such cattle knew of the existence of the disease, and the liability of its communication by reason of association and contact with others, and this liability is placed upon the ground that it would be negligence in the owner to so keep such stock that they might thus communicate the disease to the stock of his neighbor.   The writer of this does not see how it would be possible to express the conclusion in more apt language than that which is used by the Chief Justice of this court, which we have herein quoted.

If the liability for damages rests upon the ground of negligence and that negligence at common law is presumed from a failure to perform the duty of restraint, then, there being no duty of restraint of the animal placed upon the owner by the laws of this State, there can be no negligence in permitting such cattle to run at large or upon the land of their owner, unless knowledge of the character of the stock as to fence-breaking qualities and their condition as to disease, be brought home to the owner, and there being no negligence, liability does not exist.   In the opinion now being considered, we stated that a contrary proposition was announced, by Thompson and Shearman & Redfield on Negligence.   We have examined the cases cited by those authors in support of the text and do not find the proposition asserted well supported by the cases cited.

Herrick v. Gaylor, 65 Ill., 101, and Sangamon Dis. Co. v. Young, 77 Ill., 197, both arose under statutes of that State, and neither of them involves or discusses the question of notice to the owner of the condition or character of the stock committing the trespass.   Liability is placed solely upon the ground that the statute was violated in introducing into the State and keeping the animals prohibited by law.

Anderson v. Bucklin, 1 Stra., 192, and Barnum v. VanDusen, 16 Conn., 200, are cited by both authors in support of the proposition asserted by them.   In the former case the question of notice is not mentioned.   The only point discussed in that case being whether or not the plaintiff was entitled to recover the cost of the proceeding.   In the latter case the proof of knowledge by the owner of the diseased condition of the stock in question was made upon the trial and the question before the court was whether or not knowledge of that condition should have been alleged in the pleading.   This case seems likewise to rest upon a statute of the state of Connecticut and is not authority upon this question.

Becker v. Gammon, 44 Me., 322, which is not cited by either of the authors referred to, comes more nearly determining the question and supporting the proposition contended for by the defendant in error in this case, but in that case the animal which committed the trespass was unlawfully and wrongfully running at large and the case was decided strictly under the common law rule.

Cook v. Waring, 2 Hurl. & Colt., 338, supports the opinion heretofore rendered in this case.   In that case the question now before the court was thoroughly discussed and decided.   It was there held that in order to

hold the owner of sheep responsible for the communication by them of disease to others by entering upon the lands of another, it must be shown that the owner of the diseased sheep had knowledge of their diseased condition before the injury occurred.

As before quoted, it is said in the opinion delivered in this case by Chief Justice Gaines: "The owner of a dog may as a general rule permit him with impunity to run at large, but if he knows him to be vicious and does not restrain him he is liable for any injury he may inflict upon person or property." And "it is the right of every owner of domestic animals in this State not known to be diseased, vicious or breachy to allow them to run at large." And it is said that the principle of the common law applicable to the owner of the dog "should apply to the owner of any domestic animal known to him as being accustomed to break through an ordinarily good and sufficient fence." Applying, then, the same doctrine to the owner of the cattle in this instance that would be applied at common law to the owner of a dog, we have as a logical conclusion that the owner of cattle not known to be breachy or vicious may lawfully permit them to run at large and is not liable for trespasses committed by them (except upon lands enclosed with a sufficient fence under the statute) unless he knows that they are breachy and liable to break fences. In case of a statutory fence the owner of the stock would be liable for the ordinary consequence of such trespass.

We find no reason to change our opinion in this case and the motion for rehearing is therefore overruled.

*Rehearing refused.*