**BLAKELY–SETTEGAST–MARTIN CATTLE CO. v. KIDD et al.    (No. 7871.)**

(Court of Civil Appeals of Texas. Galveston. May 20, 1920. Rehearing Denied . June 17, 1920.)

**1. Animals ⬤⇒98—Shipper using railroad stock pens held not liable ·for trespass by cattle breaking fence.**

When landowner joined·his fence with railroad stock pens, he knew of their use, and took the risk of injury to crops from cattle placed in the pens breaking the fence and getting on his land; shippers .owing no other duty then not negligently to use the pens, so as to cause injury.

**2. Animals ⬤⇒98—Responsibility for trespass . on inclosed land defined.**

Where the law requiring the owner of stock to keep them confined is not enforced, the owner is not liable for trespass by the cattle on inclosed land of another, unless he knows the cattle are vicious, in the sense that they have the habit of breaking into inclosures which ordinarily restrain cattle of that class.

Appeal from Galveston County Court; George Q. McCracken, Judge.

Suit by Seaborn Kidd and others against the Blakely-Settegast-Martin Cattle Company and another. From a judgment for plaintiffs against the named defendant, it appeals. Reversed and rendered.

J. W. Lockett, of Houston, for appellant. L. R. Patton, of Galveston, for appellees.

PLEASANTS, C. J.    This suit was brought by appellee against the appellant and the Gulf, Colorado & Santa Fé Railway Company to recover damages to growing crops belonging to appellee, caused by the depredations of cattle belonging to appellant. The railway company was made defendant, apparently on the theory that, being the owner of the pens out of which the cattle broke onto the crops of appellee, and the cattle having been placed in the pens for shipment, they were in the possession and control of the railway company, and it was liable for the damage caused by their depredations. The cause of action is thus alleged:

"The plaintiff represents to the court: That on or about the 14th day of July, 1918, and prior thereto, that he lived at the town of Hitchcock, Galveston county, and rented land next to and adjoining the stock pens of the defendant railway company northward from the town of Hitchcock about a half mile, more or less. .That on or about the said date the defendant owned or leased land upon which were pens and fences, which land and fences were used in detaining live stock for shipment on said railway cars and trains. That on said date before alleged the defendant B. S. M. Cattle Company had a large number of cattle for shipment. That on said date the agent or representative of the above cattle company, defendant, had in one pen of the stock pens a large number of calves, and in adjoining pen, or near by, the cows. That the plaintiff has reason to believe such cows were the mothers of some or all of the calves, and that the cattle company were separating the cows from the calves with the intention of shipping a part or all of the calves and a part or all of the cows. That at the time of separating the cows and calves, or thereafter, and while the cows and calves were being detained in the stock pens, the cows and calves, or part of the cows and calves, did break down the fence, or part of the fence, adjoining and dividing the land used by the defendant railway company, and the land being used by the plaintiff for farming purposes, which fence was a five-strand barb wire fence with posts about every 10 or 15 feet along said division fence or part thereof. That the plaintiff had growing crops on the land adjoining said stock pens owned or controlled by the defendant railway company, which growing crops consisted of 1½ acres of sorghum cane in good growing condition, one-half acre of cantaloupes, one acre of peas and corn, in addition to about 4 acres of corn, all of which crops were in fine growing condition. That the entire land in said tract rented by said plaintiff, Seaborn Kidd, amounted to about 10 acres more or less, and that the same was entirely fenced with a good and sufficient fence. That the cattle of the defendant cattle company, or a large part of them, being detained with the knowledge and consent and as is the usual custom under the circumstances of the cattlemen and the railroad, did enter upon and destroy the entire crop of sorghum cane, cantaloupes, peas, and a greater part of the corn growing on said land. That the defendants were careless and negligent in allowing the cows separated from their calves and unattended to break down said fence and enter upon the land of the plaintiff and destroy his crops, or a greater part of the same. That the plaintiff has reason to believe and does believe that the cattle above referred to were unattended by the defendants, or their agents or representatives, to the damage of the plaintiff in the total sum of $300, as follows: Damage to sorghum cane, $75; cantaloupes, $40: peas, $35; and corn $150."

The cattle company answered by general demurrer and general denial. The pleading of the railway company need not be stated, since the correctness of the judgment in its favor is not complained of by either of the

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

other parties to this appeal, and must be affirmed. The trial by jury in the court below resulted in a verdict and judgment against the cattle company in the sum of $280.

The undisputed evidence establishes the following facts:

Appellee was, during the year of 1918, the lessee of a farm of about 10 acres near the town of Hitchcock on the line. of the Gulf, Colorado & Santa Fé Railway in Galveston county. The railway company maintains stock pens connected with a loading chute on its line near Hitchcock for handling shipments of stock. The farm leased by appellee is inclosed on its north side by the right of way fence of the railway and on the west by the fences of the stock pens. On the south and east the fences were erected and kept up by the owner of the farm or the lessee. There is no testimony showing any agreement on the part of the railway company that the south and west fences of the farm could connect with the railway's right of way and stock pen fences, but presumably said connection was with the consent or acquiescence of the railway company. The fence inclosing the stock pens was sufficient for the purpose and there is no evidence that it was not kept in repair.

On about July 14, 1918, the defendant cattle company placed a number of cows with their calves in these stock pens for the purpose of separating them and shipping some of them. This separation was accomplished, and six carloads, four of them cows and two of calves, were shipped on the night of said day. The cattle which were not shipped were left in the pen to be taken back to their range on the following morning. During the night some of these cattle broke the fence forming a part of appellee's inclosure and entered upon and injured appellee's growing crops. There is no stock law in force in the precinct of Galveston county in which appellee's farm is situate.

At the conclusion of the introduction of the testimony, appellant moved the court to instruct the jury to return a verdict in its favor. This motion was refused by the court, and this ruling of the court is assailed by the first assignment of error presented in appellant's brief.

[1] We agree with counsel for appellant that the evidence fails to show liability on the part of appellant for the injury sustained by appellee. The stock pens were maintained by the railway company for the purpose for which they were used by appellant, and when appellee joined his fence with the stock pen fence he knew, or must be charged with knowledge of the fact, that the pens would be so used, and when he availed himself of the use of this fence to inclose his farm he took the risk of injury from cattle, which

were placed or kept in the pens by shippers, breaking the fence and getting upon appellee's cultivated land. Shippers using the pens for the purpose for which they were maintained owed appellee no duty other than not to knowingly or negligently so use them as to cause injury to appellee.

Plaintiff's petition alleges in substance that the keeping of the cattle in the pen under the circumstances was the usual custom of the cattle men and the railroad, and it certainly cannot be held that such use of the pens by appellant was wrongful or negligent. There is neither allegation nor proof that appellant knew or had reason to believe, when it left the cattle in the pen after loading those that were shipped, that they would break the fence and trespass upon plaintiff's premises.

[2] It is well settled by our authorities that, where the law requiring the owner of stock to keep them confined is not in force, the owner is not liable for trespass by his cattle upon the inclosed lands of another, unless he knows that the cattle are vicious in the sense that they have the habit of breaking into inclosures which would ordinarily restrain cattle of that class. Clarendon Land Co. v. McClelland Bros., 89 Tex. 483, 34 S. W. 98, 35 S. W. 474, 31 L. R. A. 669, 59 Am. St. Rep. 70. Tested by this rule, neither the pleading nor the evidence in this case shows any liability on the part of appellant for damage sustained by the appellee.

It follows, from these conclusions, that the judgment in favor of appellee Kidd against appellant should be reversed, and judgment here rendered for appellant; and it has been so ordered.

Reversed and rendered.