394

## HERRING et al. v. SCHINGLER et ux.

### No. 3037.

Court of Civil Appeals of Texas. Beaumont.

Jan. 30, 1937.

Rehearing Denied Feb. 3, 1937.

Howth, Adams & Hart, of Beaumont, for appellants.

C. E. Pool, of Beaumont, for appellees.

WALKER, Chief Justice.

On the 20th day of June, 1934, Betty Jim Herring, seven years old, while playing in her yard on Sabine Pass avenue in the city of Beaumont, was bitten by a stray dog; her injuries were severe, and, on medical advice, she was given the treatment for rabies. This suit was brought by appellants, J. E. Herring and wife, Betty Jim's father and mother, for themselves and as her next friends, against Mr. and Mrs. Joe Schingler, appellees, claiming damages for the injuries suffered by Betty Jim. Appellants alleged that the dog belonged to appellees; they pleaded two theories of recovery:

First. "That said dog was of a vicious disposition and had on previous occasions bitten other people, among them being Joe Schingler, one of the defendants herein; the vicious disposition of the dog and its propensity to bite people was well known to the defendants, or could and should have been well known to them in the exercise of ordinary care;"

Second. "On the same day and just prior to the time the defendants' dog attacked Betty Jim Herring, Joe Schingler was treating this dog for the mange by washing it in a solution of creosote and water, which treatment irritated the dog and caused him to bite the defendant, Joe Schingler. In treating the dog as above described, defendant failed to tie the dog or confine him in a space from which he could not escape, and as a result thereof, after biting the defendant, he left the premises of defendant, and in a few minutes thereafter, still smarting from the effect of the mange treatment, attacked Betty Jim Herring, which failure or omission of defendant to tie the dog or confine him while treating him for the mange was negligence, and as a direct and proximate result of defendant's negligence in failing to confine the dog, the plaintiffs herein were injured as above set out."

Another ground of negligence alleged by plaintiffs was: "Plaintiffs would further show that defendants were negligent in that after the dog had bitten the defendant, Joe Schingler, it was permitted to leave the premises of defendants and defendants made no effort to restrain the dog when said dog could have been restrained by use of the means at defendants' command without danger to themselves, or to warn persons on the public street down which the angered and vicious dog was going, and as a direct and proximate result of defendants' failure to restrain the dog, or to warn those in its path of its vicious disposition and irritated condition, the plaintiffs suffered the injuries hereinbefore set out."

Appellees answered by demurrers, general denial, etc.

On conclusion of the evidence, the trial court instructed the jury to return a verdict in favor of appellees on two grounds: First, that the evidence did not raise against appellees the issues of negligence pleaded by appellants; second, the evidence failed to raise the issue that appellees owned the dog that bit little Betty Jim.

The testimony on the issues of negligence was as follows: Appellees lived on Sabine Pass avenue about four blocks from the Herring home, and had lived there many years prior to June 20, 1934. On that date they owned a valuable Chinese Chow dog named Chink about two and one-half years old that they had raised from a puppy. Many witnesses testified in the case who had known Chink from the day appellees brought him into their home. All these witnesses testified that Chink was not a vicious dog. Mrs. Schingler maintained an office in her home, and Chink spent most of the time in the office with his mistress, and was petted by her clients. Chink played around the neighborhood, was in and out of a garage just across the street, a bakery, and other places of business near the Schingler home. There was no testimony that this dog ever committed a vicious act prior to the morning of June 20. But, if that point be conceded, appellants say that Chink left the Schingler home on the morning of the 20th of June; that, before leaving, he bit Mr. Schingler; and that after he left appellees were guilty of negligence in not following and recapturing him. On these points the evidence was as follows: Chink had the mange, but was well on the road to recovery. On the morning of the 20th of June, Mr. Joe Schingler and a negro boy were giving him the mange treatment. During the treatment they had Chink in a tub with a rope around his neck. After the treatment, while Mr. Schingler was drying him with a towel, Chink struggled to escape, and in his struggle scratched a small place on Mr. Schingler's hand with his teeth. He escaped by slipping his head out of the noose. The testimony was clearly to the effect that Chink was not vicious in his efforts to escape, and that Mr. Schingler received his scratch as a result of an accident, and not as a vicious act of the dog in attempting to bite him. After escaping, Chink did not at once leave the Schingler yard, but played around the front part of the yard. On that issue Mr. Allen Rutledge, who was at that time doing a job of painting for the Schinglers, testified as follows:

"Q. Were you there the day that dog was washed and got away from Schingler? A. Yes, sir, I was painting.

"Q. Tell the jury what happened? A. The dog come around where I was painting screens, and played around. The dog was always with me when I was out like that; and directly I made him get away, where I could put the screens away; and so directly the dog disappeared, and so Mr. Schingler went hunting the dog."

This was after Chink escaped from Mr. Schingler. There is no evidence controverting this testimony by Mr. Rutledge. Mr. Schingler was not able to find Chink; Betty Jim was bitten after the dog wandered away from the Schingler home.

■ There is no evidence in the record controverting the fact conclusion stated above. Under all the evidence, in permitting Chink to play around their yard, and in not restraining him, appellees were not guilty of negligence in keeping a vicious dog as alleged by appellants in their first count; nor in permitting Chink to escape from their yard, nor in their efforts to recapture him after he escaped.

■ Unless known to be vicious, "the owner of a dog may with impunity permit him to run at large." 2 Tex.Jur. 945; Clarendon Land Investment & Agency Co. v. McClelland, 89 Tex. 483, 34 S.W. 98, 35 S.W. 474, 31 L.R.A. 669, 59 Am.St.Rep. 70; Clarendon Land Investment & Agency Co. v. McClelland, 86 Tex. 179, 23 S.W. 576, 1100, 22 L.R.A. 105. On the issue of proof of the vicious propensity of a dog, 2 Tex.Jur. 946 states the Texas rule as follows: "It is the common-law rule, recognized in Texas, that it is incumbent on one complaining of the savage act of a dog to prove the animal's vicious propensity, and that the defendant had actual knowledge thereof or constructive knowledge of facts which would put a person of ordinary prudence on notice that permitting the dog to run at large might cause injury." See, also, Villareal v. Alexander (Tex.Civ. App.) 13 S.W.(2d) 712. Again, same authority: "In order to show the defendant's knowledge of the animal's habits, testimony may be introduced as to the dog's reputation for being vicious, and his tendency to bite mankind." See, also, Triolo v. Foster (Tex.Civ.App.) 57 S.W. 698; Trinity & S. Ry. Co. v. O'Brien, 18 Tex.

Civ.App. 690, 46 S.W. 389. Under the evidence.in this case, Chink was not a vicious dog—the slight injury inflicted by him upon Mr. Joe Schingler was not a vicious act. There is no circumstance in the case sufficient to put a person of. ordinary prudence "on notice that permitting a dog to run at large might cause injury." For the reason that the evidence did not raise the issues of negligence pleaded by appellants, judgment was properly instructed in favor of appellees. We pretermit a discussion of the issue that Chink was the dog that bit Betty Jim, though, in our judgment, the evidence was not sufficient to support a finding on that issue in favor of appellants.

It follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.

Affirmed.