Wyatt MYERS, Appellant,

v.

CLIFF HYDE FLYING SERVICE, INC.,
Appellee.

No. 13357.

Court of Civil Appeals of Texas.

Houston.

July 9, 1959.

Red, Kemp & Fahey, Pat N. Fahey, Houston, for appellant.

Fulbright, Crooker, Freeman, Bates & Jaworski, L. S. Carsey, Houston, for appellee.

WERLEIN, Justice.

This suit was originally brought for possession of an airplane which appellant had purchased from appellee, and which was damaged while appellant was taking advance flying instructions from appellee's agent. Appellee repaired the damage but refused to surrender the plane to appellant until the costs of repairs were paid. After suit was filed, appellant, under protest, paid appellee for such repairs, and then amended his pleadings seeking to recover the amount so paid. On the findings of the jury, the Trial Court rendered judgment that appellant take nothing, from which judgment this appeal has been perfected.

■ Appellant complains of the Court's refusal to submit five Special Issues covering negligent acts and omissions of appellee's employee and agent, Goins. By his amended petition and first supplemental petition, appellant alleged five specific grounds of negligence on the part of Goins. To issues submitted, the jury found that the action of Goins in permitting the speed of the plane to be reduced below 100 miles per hour was not negligence; that his action in rapping on the air speed indicator was not negligence; that his failure to vocally tell appellant to "increase his power" was not negligence; that his failure to sooner take control of the plane was not negligence; that Goins was flying the plane immediately prior to the time it touched the ground; and that Goins did not fail to maneuver the plane properly after he began flying it. Appellant does not complain that the Court erred in submitting the issues given.

We think the Court properly refused to submit appellant's requested Special Issues Nos. 3, 5, 7, 9 and 12. The Court fairly submitted the controlling issues raised by the pleadings and evidence. The requested Issues for the most part were merely different phases or shades of the Issues submitted. Rule 279, Texas Rules of Civil Procedure. Northeast Texas Motor Lines v. Hodges, 138 Tex. 280, 158 S.W.2d 487.

■ Furthermore, appellant, having pleaded specifically certain acts and omissions of negligence, was restricted thereto and cannot complain because the Court did not submit Issues based upon specific

acts or omissions which he did not plead. Jenkins v. Hennigan, Tex.Civ.App., 298 S.W.2d 905, writ ref., n. r. e.; Schodts v. American Hospital and Life Ins. Co., Tex.Civ.App., 313 S.W.2d 946, writ ref., n. r. e.; Story v. Partridge, Tex.Civ.App., 298 S.W.2d 662, writ ref., n. r. e. Moreover, the jury having found that appellant was negligent, any answers to the requested Special Issues, had they been submitted, would not have affected the Court's judgment since contributory negligence on the part of appellant effectively barred his right to recover. Hence, any error on the part of the Court was not reasonably calculated to cause, nor did it probably cause, the rendition of an improper judgment. Rule 434, T. R. C.P.

Appellant's Point 10 asserts that the Court erred in rendering judgment for appellee since the evidence shows and the jury found that Goins was flying the plane at the time of the crash and that appellant did not fail to use the usual and customary means of bringing his air speed up when warned by Frank Goins that his air speed was getting too low just prior to the accident.

The jury did not find Goins negligent in any particular, but in answer to Special Issues 15, 16 and 17 found that appellant moved the control column of the airplane forward too rapidly and abruptly when warned by his instructor that his air speed was getting too low, and that such action was negligence, and a proximate cause of the accident.

On the flight in question, during which the accident occurred, appellant had taken off from the Sam Houston Air Port with Goins in the plane to instruct him. When they were about seven miles from a private air port in the vicinity of the Katy road, appellant set up a "long approach straight in." He was instructed to glide the airplane at 100 miles per hour. When the airplane was down to about 300 feet from the ground, the air speed got down to about 95 miles per hour, whereupon Goins cau-

tioned appellant that he was losing air speed and appellant thereupon brought the air speed back to 100 miles per hour. Appellant continued the normal approach until he got near or over the end of the runway, when he started slowing the air speed again, whereupon Goins brought the air speed to appellant's attention by tapping again on the air speed indicator, thus telling him that his air speed was low. Appellant testified that after Goins tapped on the air speed indicator the second time, "It wasn't too long after that we hit very hard."

Goins testified that when appellant started slowing the air speed, he was about 20 feet from the ground, and when Goins cautioned him that his speed was getting low, appellant "immediately got the stick forward," and that he just shoved the stick forward too far, and the aircraft suddenly went toward the ground. He further testified that "he went forward with the stick too fast and the airplane struck the ground before I could recover it."

Appellant contends that the jury's finding that he used the usual and customary means of bringing his air speed up when warned that it was too low, conflicts with the finding that appellant moved the control column of the airplane forward too rapidly and abruptly when warned by his instructor that his air speed was getting too low. We do not think there is any real conflict between such findings. The evidence showed that the speed of the airplane could have been increased in several different ways: (1) by lowering the nose, by releasing back pressure (moving the stick forward); (2) by adding more power, and (3) a combination of such means. Any of the three would have been proper. Both appellant and Goins testified that appellant did not add more power, but did lower the nose. That was using a proper means. Goins testified, however, that appellant moved the control column (which had the effect of lowering the nose) too fast and too suddenly, and such action caused the crash. The effect of the findings is that appellant did

use the usual and customary means of increasing the speed of the airplane, but he used such means in a negligent manner by moving the control column forward too rapidly and abruptly.

Further, we find no conflict in the jury's findings concerning appellant's act in moving the control column forward too rapidly and abruptly and the finding that "Goins was flying the plane immediately prior to the time it touched the ground." Goins testified that he attempted to get the aircraft under control, after appellant's abrupt and unexpected reaction, and further testified that he "was on the control before it hit the ground." The jury found that Goins did not fail to maneuver the plane as an instructor pilot of ordinary prudence after he began flying the plane on the occasion in question. The jury was warranted in finding from the evidence that appellant's negligent employment of the usual and customary means was what caused the accident. Although Goins was on the control and "flying" the aircraft just before it hit the ground, he was unable in the exercise of ordinary care to prevent the consequences of appellant's prior negligent act. It is the duty of the Court, where there are apparent conflicts in the jury findings, to reconcile such apparent conflicts if it can be reasonably done in the light of the pleadings and the evidence. Story v. Partridge, supra, and authorities cited.

Appellant's Sixth Point asserts that the Court erred in sustaining the objection to the testimony of appellant that he had a discussion with Goins after the plane crashed and Goins stated that he felt bad about it and that it was his (Goins') fault and that he would pay for it if he were financially able.

The evidence shows that appellant was undertaking to land the plane at a private air port near the Katy road, and it was there that the accident occurred. The plane hit and bounced, and the door flew open. It was immediately air-borne and appellant closed the door. The plane then returned to Sam Houston Air Port at Houston, some miles away. The testimony tendered was not offered for impeachment purposes. It was not stated by appellant that he was offering the statement as a part of the res gestae, although he claims that such statement was a res gestae statement. Appellant offered the following testimony:

"After the accident was over, after we went back and landed, and made a visual check of the damage, we were at one of the wing tips, he and myself together. He said, more or less, 'I really feel bad about it. I feel it was my fault, and if I was able to pay for it, financially able, I would.'"

We think the Court properly held that such statement was not admissible for any purpose. The accident had occurred some time before and the two men had returned to the home base, landed, and then made a visual check of the damage. There is nothing to indicate how much time elapsed between the crash and such conversation. It was not shown that Goins was in any manner excited or under emotional strain at the time.

The law is well established that where the declaration is not contemporaneous with the event to which it relates, the party offering such statement sustains the burden of showing that the statement was made under circumstances disclosing a lack of opportunity for reflection and fabrication on the part of the declarant. Guerrero v. Wright, Tex.Civ.App., 225 S.W.2d 609, ref., n. r. e.; Wall & Stabe Co. v. Berger, Tex.Civ.App., 212 S.W. 975; A. B. C. Storage & Moving Co. v. Herron, Tex.Civ.App., 138 S.W.2d 211, error dism., judgment corr.; 32 C.J.S. Evidence § 414, p. 42.

The statement was inadmissible also because it was merely a conclusion at

most. Zepeda v. Moore, Tex.Civ.App., 153 S.W.2d 212, error dism.; A. B. C. Storage & Moving Co. v. Herron, supra. Furthermore, the statement being a conclusion was not admissible in any event against Goins' employer, appellee herein. Goins is not a party to this suit. The alleged statement was not made in the course of his employment. Red Arrow Freight Lines v. Gravis, Tex.Civ.App., 84 S.W.2d 540, no writ history; Rogers v. Collier, Tex.Civ.App., 223 S.W.2d 560, writ ref.; Romo v. San Antonio Transit Co., Tex.Civ.App., 236 S.W.2d 205, writ ref., n. r. e.

■ Appellant in Points 8 and 9 contends that the Court erred in sustaining appellee's objection to the introduction in evidence on grounds of immateriality and irrelevancy Sections 43.70 and 60.2 of the Civil Air Regulations of the Civil Aeronautics Board of the United States. The record in this Court fails to disclose that the appellant offered such sections in evidence, but that he did offer Section 43.40, which was excluded on the ground that it was immaterial and irrelevant. He makes no complaint of the exclusion of Sec. 43.40. True, appellant filed in this Court on January 2, 1959, a motion to amend the transcript and delivered to this Court on January 6, 1959, a supplemental transcript containing a bill of exceptions complaining that the Court did not permit the introduction of said Sections 43.70 and 60.2 of said regulations. Such bill of exceptions was approved with certain corrections by the trial judge on January 5, 1959, long after that Court had lost jurisdiction of the case, the original transcript having been filed in this Court on July 28, 1958. We have, therefore, overruled such motion and have refused to permit the filing of the supplemental transcript. Appellant asserts that we should take judicial notice of the same. This Court cannot take judicial notice of regulations not offered in evidence nor brought to the Court's attention nor made a part of the record in compliance with legal requirements.

Appellant finally contends that the Trial Court erred in withdrawing from the consideration of the jury issues concerning the agreement by appellee to keep the plane insured, as alleged by appellant, and in rendering judgment that appellant take nothing, and also erred in refusing to permit appellant to file a trial amendment.

Appellant pleaded that appellee's agent represented to appellant that the plane was insured until the purchase and sale transaction was closed and appellant could obtain insurance in his own name; that appellant made an energetic effort to obtain insurance but before any policy was issued to him covering the plane, the crash occurred; that the representation of appellee was false in part in that the airplane was not covered by insurance against crashes as he was led to believe; that he was misled, to his injury, by said representation; that if appellant had the kind of insurance appellee misled appellant to believe, the damaged plane would have been repaired at the expense of the insurer. That for such reasons appellee was estopped to deny that it carried insurance against crashes and should be held to be responsible as an insurer for the making of such repairs without cost to appellant.

Appellant testified as follows:

"Q. Did Mr. Hyde say anything about insurance on the plane? A. Well, sir, from the way I understood, as long as his pilot was in it it would have sufficient coverage on it.

"Q. Was that part of the agreement and consideration on the sale of the plane? A. That was my understanding of it, sir.

"Q. Was anything said about that lasting until you were able to obtain insurance? A. Yes, sir, I believe it was. Mr. Hyde himself tried to help me get insurance.

"Q. Did he or did he not tell you that you were insured until you were

able to get your insurance? A. While his man was in the plane, yes, sir.

"Q. Did you make an effort to get insurance? A. Yes, sir.

"Q. Specifically, who did you talk to? A. Mr. Hyde placed a call to an insurance company in Ft. Worth. I called two or three companies in Houston and I also talked to Mr. Parten in Richmond, Texas.

"Q. Was any reason given to you why insurance couldn't be obtained at that time? A. Yes, sir, for the limited amount of flying experience I had.

"Q. In other words, the company wouldn't insure you because you didn't have enough flying time and you didn't have a license, is that correct? A. Yes, sir.

"Q. Did you understand anything that Mr. Parten, or what Mr. Parten might have said to you, whether he had or had not been able to secure insurance for you? A. Well, sir, he is agent for some company in Houston, and the understanding I had, he thought he had a verbal binder on the plane.

"Q. Did you find out after the accident that wasn't so? A. Yes, sir."

Appellant also testified that within a week after he made the purchase of the plane he went to Mr. Parten's and got the binder; that he believed he closed the deal for the plane on October 26 and the accident was in the middle of November; that he did not deny that he could have told Mr. Hyde he had a binder on the plane; that he knew he made the statement to his (Hyde's) mechanic but did not know whether he told Mr. Hyde; that he thought he had insurance with Mr. Parten when the airplane crashed. When asked whether he did tell Mr. Hyde that he had obtained insurance, he testified:

"A. I think I told him I had a binder on it.

"Q. You told him you had the binder?

"A. I guess I did."

He testified that the conversation with Mr. Hyde, in which he advised Mr. Hyde that he had a binder of insurance, took place before the crash, and that he told Mr. Hyde's mechanic prior to the crash that he had a binder.

Mr. Cliff Hyde, President of appellee Corporation, testified that the conversation that he had with appellant concerning his insurance, during which he called Ft. Worth and tried to get appellant insurance, was either the day appellant paid the $6,000 or the day he paid the balance on the plane; that after that he had a conversation with appellant and appellant informed him that he (appellant) had a binder on his airplane with somebody in Rosenberg or Richmond and that "at that time I dropped the insurance we had."

From the foregoing testimony it clearly appears that the title to the plane had been transferred to appellant prior to the crash, and that appellant had undertaken to procure insurance for himself on the plane and thought he had a binder on the plane, and so informed appellee's mechanic and Mr. Hyde. Mr. Hyde dropped his insurance after being informed by appellant that he had a binder on the plane.

We do not think the letter that appellee wrote one Mr. Robert Hetterich of the Ohio Casualty Insurance Company on May 21, 1957 indicates that Mr. Hyde thought he had crash insurance on the plane in question. The letter clearly has reference to liability insurance which would protect appellee from negligent acts or omissions of its employees and provide for it legal protection and expenses. It seems clear to us from the foregoing testimony that at the time of the flight in question and for some time prior thereto appellant was not rely-

ing on any representation made by Mr. Hyde. He had undertaken to procure his own insurance when he got title to the plane, and thought he had it. Having so informed Mr. Hyde and appellee's mechanic, he is not in a position to complain that Hyde thereupon dropped his insurance and had no crash insurance after title to the plane passed, even if we assume appellee could have carried such insurance on a plane it did not own. Under his own testimony, appellant has failed to raise any issue of estoppel or reliance on any alleged misrepresentation.

■ In determining whether the Trial Court properly withdrew the Issue of insurance from the jury and rendered judgment thereon, we must disregard testimony favorable to appellee and consider only the evidence favorable to appellant. Every intendment fairly deducible from the evidence must be made in favor of the losing party, and the evidence must be such that there is no room for ordinary minds to differ as to the conclusions to be drawn therefrom. Shaw v. Tyler Bank & Trust Co., Tex.Civ.App., 285 S.W.2d 782, ref., n. r. e.; Highway Insurance Underwriters v. Griffith, Tex.Civ.App., 290 S.W.2d 950, ref., n. r. e.

■ In applying these well established rules, we have concluded that the Trial Court did not err in its judgment with respect to insurance.

■ Appellant undertook to file a trial amendment, pleading in effect that before and at the time of purchasing said plane, appellee's agent with authority so to do agreed as part of the consideration for said sale to appellant that said plane would be kept insured by appellee until appellant could obtain insurance on the plane in his own name. The Court refused to permit the filing of such trial amendment and in so doing stated that no request was made for permission to file the trial amendment until after the case had been submitted to the jury. We think that the trial amend-

ment came too late and that the Court properly refused to permit the filing of the same. Had it been filed, however, we do not think that it could have been of any benefit to appellant in view of the testimony hereinabove set out.

Appellant's Points of Error are overruled and the judgment of the Trial Court is affirmed.