**John BECK et al., Petitioners,**

v.

**Sylvia Irene SHEPPARD (Pulera), et al., Respondents.**

**No. B-7225.**

Supreme Court of Texas.

May 17, 1978.

Heard L. Floore and Wallace Brady, Fort Worth, Touchstone, Bernays & Johnston, Webber W. Beall, Jr., Dallas, for petitioners.

Mock & Fleniken, William J. Fleniken, Jr., Fort Worth, for respondents.

STEAKLEY, Justice.

·John Beck was the owner of a saddle horse named Duke who was pastured on a farm owned by Leonard Boyd. At about dusk on October 17, 1972, a Volkswagen automobile driven by Sylvia Irene Sheppard, in which her daughter Ilene was a passenger, collided with Duke on U.S. Highway 377, south of Denton, Texas. Mrs. Sheppard and her child suffered physical injuries, the automobile was demolished, and the horse was killed.

The suit at bar was subsequently filed by Mrs. Sheppard on her behalf and that of her daughter against John Beck; later, by amended petition, Leonard Boyd was also sued. Trial before a jury commenced on November 1, 1976. After Mrs. Sheppard rested her case, the trial court instructed a verdict that she take nothing against Beck and Boyd. On appeal, the Court of Civil Appeals affirmed the trial court judgment in favor of Boyd but reversed the judgment as to Beck and remanded the cause to the trial court. 557 S.W.2d 578.

We reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

Boyd is the owner of a farm in Denton, Texas, part of which borders on U.S. Highway 377. Boyd raises horses on his land and maintains a barn and pastures for that purpose; he also permits friends to stable their horses on the farm. Beck was one of his friends doing so. Under the arrangement between them, Boyd had no responsibility with respect to the care of Duke.

On October 17, 1972, Beck went to the farm to feed Duke. It was Beck's practice to do so late in the afternoon and normally the horse would be out of the pastures and at the barn. On this occasion Beck went out somewhat earlier than usual because, he said, he felt he was taking the flu. Duke was not waiting for him at the barn. Another horse owner was riding his horse, and Beck asked him to run Duke up to the barn. The friend returned from his ride and reported to Beck that he did not see the horse. The friend then told Beck to go home and that he would feed Duke when he came to the barn. Beck put out feed for the horse and departed at about 6:30 P.M. The collision with Duke occurred later, at about 8:00 P.M. There is no evidence that either Beck or Boyd knew that Duke was out of the pastures.

The propriety of two presumptions is to be considered under the rulings of the Court of Civil Appeals and the argument advanced by Mrs. Sheppard. The Court of Civil Appeals first presumed that

the Boyd premises were of such nature that Beck would have seen Duke from the barn, hence there was a fact issue as to whether Beck was negligent in failing to make a further search. The court applied this presumption notwithstanding its recognition that the record was "substantially silent" as to the nature of the land forming the Boyd pastures, i. e., whether level or hilly and whether or not Duke could have been in the pasture while not visible to Beck at the barn or seen by the friend on his ride. A presumption is "a rule which 'draws a particular inference as to the existence of one fact, not actually known, arising from its usual connection with other particular facts which are known or proved.'" *Lobley v. Gilbert*, 149 Tex. 493, 497, 236 S.W.2d 121, 123 (1951). The necessary predicate to a presumption is a fact proved or known, and it was error for the court here to presume that the land on the Boyd farm was of a certain character in the absence of facts upon which to base the presumption. Inferences of fact cannot be drawn from uncertain premises. *Bob's Candy & Pecan Co. v. McConnell*, 140 Tex. 331, 167 S.W.2d 511 (1943).

The presumption particularly urged by Mrs. Sheppard[1] is that the presence of Duke on the highway established a rebuttable presumption of negligence against Beck and Boyd under Art. 6971a, Tex.Rev. Civ.Stat.Ann. (Supp.1978) [later quoted and legislative history reviewed]. They rely on the case of *Adamcik v. Knight*, 170 S.W.2d 521 (Tex.Civ.App.1943, no writ), which was followed with approval in *Dorman v. Cook*, 262 S.W.2d 744 (Tex.Civ.App.1953, writ dism'd).

The court in *Adamcik* recited that:

Adamcik sued Knight for damages to an automobile resulting from a collision between the automobile and a horse belonging to Knight allegedly roaming at large unattended, on a fenced designated state highway in violation of Art. 1370a, Vernon's Ann.P.C., which provides: 'Any person owning or having control of any horse . . . who permits the same to traverse or roam at large, unattended, on the right-of-way of any designated State Highway in this State where the same is enclosed by fences on both sides shall be guilty of a misdemeanor . . . .'

170 S.W.2d 521.

In holding that proof that Knight was the owner of the horse was sufficient to present a prima facie case of liability against him, the court cited a statement in 45 A.L.R. 505 at 507 (1926) that:

. . . 'The weight of authority, however, seems to be that a statute or ordinance forbidding the allowing of domestic animals to run at large on the public ways is designed, inter alia, for the prevention of accidental injuries to persons using the highways for the purpose of travel; and where an accident occurs *as the result of a violation of such a statute* a presumption of negligence on the part of the owner of the animal arises, which is sufficient to carry the case to the jury.' (Italics added).

170 S.W.2d at 522.

Apart from the question of whether a violation of the statute had actually been shown,[2] the statutory basis for the ruling in *Adamcik* no longer obtains. The Legislature in 1959 amended the statute considered in *Adamcik* and for the first time defined the criminal offense in terms of "Any person . . . who *knowingly* permits such animal to traverse or roam at large, unattended" on a highway. Tex.Gen.Laws, ch. 374 § 1, at 835 (1959). The statute now appears in the civil statutes as Art. 6971a, and reads:

---

1. Mrs. Sheppard states in her Application for Writ of Error:

"Petitioners want to make it clear to this Court in this application, as they attempted to do in the Court of Civil Appeals, t' at they are ascerting [sic] and relying upon statutory violations of the stock law in addition to acts and omissions amounting to common law negligence. In this connection Petitioners do not hesitate to admit that the case was tried primarily upon the theory of statutory violations and they pray that this Court will give them a ruling concerning the applicability of the stock law to the facts of this case."

2. See generally Annot. 59 A.L.R.2d 1328 (1958) (superseding Annot. 45 A.L.R. 505 (1926)) and Annot. 34 A.L.R.2d 1285 (1954).

*Art. 6971a. Animals running at large on State Highways; enforcement notwithstanding other laws*

Section 1. Any person owning or having responsibility for the control of any horse, mule, donkey, cow, bull, steer, hog, sheep, or goat, who knowingly permits such animal to traverse or roam at large, unattended, only on the right-of-way of any U.S. Highway, or State Highway in this state but not including numbered farm-to-market roads, shall be guilty of a misdemeanor, and shall be fined in any sum not exceeding Two Hundred Dollars ($200.00). Each day that an animal is permitted to roam at large in violation hereof shall constitute a separate offence.[3]

As shown by the recitation in the opinion quoted above, the 1935 statute before the court in *Adamcik* did not provide that to constitute an offense the owner or custodian must *knowingly* permit the animal to roam. See, *Jackson v. Overby*, 185 S.W.2d 765 (Tex.Civ.App.1945, no writ) where in considering Art. 1369 of the Penal Code with its requirement that the animal owner act *willfully*, and Art. 1370 of the Penal Code with its requirement that the animal owner act *knowingly*, the court wrote:

We understand that a necessary element of the offenses defined above is an intention to do the act complained of or such negligence as is tantamount to a wilful act. 39 Tex.Jur. 373. As said by Judge Williams in *Texas & P. Ry. Co. v. Webb*, 102 Tex. 210, 114 S.W. 1171, 1173:

'While the stock law is intended to require owners to confine animals, the running at large of which is prohibited, and one who permits them to run at large violates the law, it is true, nevertheless, that such animals may often escape without fault on the part of their owners, when the latter will be guilty of no offense against the law.'

185 S.W.2d at 766–7. See also *Mundy v. Pirie-Slaughter Motor Co.*, 146 Tex. 314, 206 S.W.2d 587 (1948), in which this Court considered a statute making it unlawful for any person *knowingly* to permit a motor vehicle under his control to be driven by any person not licensed to operate a motor vehicle. There we said:

The statute, as we construe it, prohibits the lending of an automobile only where the owner knows that the driver does not have a license. We do not think, therefore, that the mere proof, in the absence of actual knowledge, that the defendant's agents in the exercise of reasonable care should have known that Dickson did not have a license would show a violation of the statute.

146 Tex. at 320–21, 206 S.W.2d at 590.

■ Accordingly, we hold that neither Beck's ownership of Duke, nor Boyd's ownership of the premises, create a rebuttable presumption under Art. 6971a that Duke's presence on the highway was due to the negligence of either.

---

**3.** The statute as it read at the time of *Adamcik* was originally enacted in 1935. Tex.Gen.Laws, ch. 186, § 1, at 467 (1935). The statute was initially codified as Art. 1370a of the Annotated Penal Code and remained as such after it was amended in 1959. When the Penal Code was recodified in 1974, the statute was transferred to the civil statutes as Art. 6971a. See, Tex. Gen.Laws, ch. 399 at 996e (1973). This statute was not the first stock law. The Legislature enacted the so-called "Local Option Hog Law" in 1897 and the "Local Option Horse Law" in 1907. A concise history of these Acts, together with an explanation for the difference in their titles, is contained in *Neuvar v. State*, 72 Tex. Crim. 410, 163 S.W. 58 (1914). These statutes were also originally codified in the Annotated Penal Code, as Articles 1369 and 1370, but were transferred to the civil statutes as Articles 6946a and 6946b when the penal code was recodified. Tex.Gen.Laws, ch. 399, at 996e (1973).

Our review of the legislative history of the 1959 amendment establishes that the inclusion of the requirement of a knowing violation was deliberate. As originally introduced and passed in the Senate, the amendment did not include the word "knowingly." See, Original Bill File, S.B. 387, 56th Legislature, Reg. Sess. (Legislative Reference Library). This requirement was added to the bill by amendment when it was passed by the House of Representatives. II Tex. House Jour., 56th Legislature (Reg. Sess.) 2769 (May 11, 1959). The Senate later concurred in the amendment without change. Tex. Senate Jour., 56th Legislature (Reg. Sess.) 1326 (May 12, 1959).

■ As to common law negligence, we hold that there was no more than a scintilla of evidence that either Beck or Boyd was negligent. As to Beck, we have heretofore noted the absence of any evidence establishing the topography of the Boyd pastures and whether or not the horses in the pastures could be seen from the barn. There was no evidence that any of the fences were down or gates open, or that Duke had ever gotten out of the pastures or that he had any propensity for doing so. There was no evidence of the nature, extent or duration of the ride taken by the friend whom Beck requested to chase Duke to the barn. Such being the state of the record, there were no facts or circumstances that can be said to have reasonably alerted Beck to the possibility that the horse had escaped the fences or gates, or that would show that Beck did not exercise due care. Indeed, it is clear from its opinion that the ruling of the Court of Civil Appeals that there was a fact issue with respect to the question of Beck's negligence rested on the unsupported presumption heretofore discussed regarding the nature of the Boyd premises. The trial court therefore properly instructed a verdict in favor of Beck.

■ As noted in the forepart of this opinion, the Court of Civil Appeals affirmed the action of the trial court in instructing a verdict in favor of Boyd, the landowner. We agree. Mrs. Sheppard contends that because there was some testimony concerning prior escapes by horses, a fact issue as to Boyd's negligent failure to keep a proper lookout over Duke, the fences and the gates was raised. The evidence relied upon by Mrs. Sheppard established only that at unspecified and infrequent times in the past, Boyd had found horses which had escaped their enclosures. There was no evidence of the cause of the past instances, or that there had been any of recent occurrence involving either Duke or any of the other horses that were stabled on the Boyd farm.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.