**R.L. "Dick" GRAY, Appellant,**

v.

**William Jerry DAVIS, Appellee.**

No. 2–89–146–CV.

Court of Appeals of Texas,
Fort Worth.

July 10, 1990.

Rehearing Denied Aug. 15, 1990.

S. Gary Werley, Bishop, Payne, Lamsens & Brown, Fort Worth, for appellant.

Jearl Walker, Fort Worth, for appellee.

Before FARRIS, LATTIMORE and MEYERS, JJ.

## OPINION

MEYERS, Justice.

Appellant, R.L. "Dick" Gray, was found by a jury to have negligently allowed his horses to intrude onto the property of appellee, William Jerry Davis, causing personal injury to appellee and damage to his mares.

In seven points of error, appellant claims the trial court erred in rendering a judgment based on a finding of negligence because there was no evidence, or insufficient evidence, that: Davis had enclosures that were able to withstand ordinary horses;

Gray knew his horses were vicious or in the habit of breaking down enclosures that would otherwise restrain ordinary horses; Gray was negligent; or that he was the proximate cause of any injuries. Appellant also argues the negligence and proximate cause issues were immaterial as a matter of law, and the trial court erroneously failed to allow special issues on whether the negligence of Davis proximately caused the occurrence in question and the determination of comparative negligence between Davis and Gray.

We find that the evidence was sufficient to sustain the jury's award of damages to appellee for his horses. We fail to find proximate cause in the personal injury claim of appellee. Therefore, we affirm in part and reverse and render in part.

In the early morning hours of Friday, March 13, 1987, appellee noticed a disturbance in his pasture where he was keeping five mares for breeding purposes. Davis woke up his two nephews and his wife to help him investigate the problem. Upon entering the pasture, Davis realized that two stallions, which he did not own, were mixing with his mares. Davis and his nephews were able to pen one of the stallions and were in the process of penning the second stallion when Davis injured his right Achilles tendon. He was transported to a hospital in Azle where his right leg was placed in a cast and he was required to walk on crutches.

Upon inspection of three mares, it was determined that all three had possibly been bred during the night by the two stallions from Gray's property, and a fourth mare was injured enough to have prematurely aborted her foal. A veterinarian was required to attend to the mares. An inspection of the fencing of the Davis farm established that the two stallions had destroyed a welded steel fence to gain access to the mares on Davis' property. The two stallions were eventually claimed by Gray about six days later. Gray maintained at trial that the stallions had entered the Davis farm by way of a downed fence separating their two properties. The plaintiff's cause for negligence was tried to a jury which resulted in a judgment of $18,815.02 in his favor, for both his injury and injury to his mares.

Appellant has appealed on seven points of error. These points fall into two distinct groups having a commonality of interest.

Points of error one, two, three, and seven basically concern appellant's complaint that the court erred in not submitting his proposed special question on appellee's negligence. The basis of appellant's argument about appellee's negligence centers on whether the lands in Parker County come under the stock election statutes, thus requiring appellee to have properly fenced his land from intrusion by cattle or other types of stock.

Appellant claims that it was the duty of the plaintiff to show Parker County had either adopted the stock election law, TEX.AGRIC.CODE ANN. § 143.021–143.026 (Vernon 1982), prohibiting certain animals from roaming the county, or in the absence of such a stock election statute, that appellee had fenced his property sufficiently to keep animals of ordinary disposition from entering his property.

The history of protecting one's land against the incursion of stock roaming free is obviously a long one and some of the cases that appellant cites to us date back to the turn of the century. The owner of cattle or stock had traditionally been allowed the freedom of letting those animals roam and was not required to fence them and was not liable for damages the animals caused as trespassers upon the land of others. *Clarendon Land Inv. Agency Co. v. McClelland*, 89 Tex. 483, 34 S.W. 98 (1896). With the advent of the stock election law, the cattle and stock owner was then required to fence in his animals and was liable for damages to other landowners when they intruded on those properties and caused damages.

The evidence in this case was clear that appellant's horses intruded onto appellee's land. The jury's answer to Special Question No. 1 established appellant's negligence, but the record is devoid of any evidence of whether Parker County had

adopted the stock election law. This alone would not negate a verdict for appellee if the record reflects that appellee had enclosed his fields with a sufficient fence, or that appellant either knew or should have known his horses were vicious and had a propensity to break down fences.

In *Molton v. Young,* 204 S.W.2d 636, 638 (Tex.Civ.App.—Amarillo 1947, no writ), the court held that where there was neither allegation nor proof that the stock election law had been adopted or put in force in the county or district where the land was situated, then the case was not controlled by the stock election statute. The result is that if the landowner desires to protect his land from intrusion, it is his duty to properly fence the lands. *Id.* Failure to do so constitutes negligence and could deprive the landowner of the right to recover any damages which might result from trespassing livestock.

The transcript reflects that appellant requested special questions on the negligence of appellee which were refused by the court.

The evidence does not reflect that appellant had turned his stallions into "open range" as is contemplated by the common-law rulings. In fact, the horses that appellant was responsible for were allegedly to be securely kept on his own property behind adequate fencing. Secondly, the evidence also reflects the stallions broke down appellee's welded steel fencing in order to get to appellee's mares. Even though appellee failed to show that Parker County had adopted the stock election law, we find the record reflects appellee had adequately fenced his property in order to negate any necessity to submit a special question to the jury inquiring about his negligence. Appellant's points of error numbers one, two, three, and seven are overruled.

In points of error four, five, and six appellant complains about the sufficiency of the evidence to support the jury's answers to Special Issue No. 1. Specifically, appellant feels that proximate cause did not exist, both from an evidentiary and a legal standpoint, in order for the court to find for appellee.

Special Issue No. 1 reads as follows:

Did the negligence of leaving a gate open, if any of R.L. "Dick" Gray proximately cause the stallions to escape and cause the occurrences in question?

Answer "Yes" or "No" as to each of the following:

Personal Injury to Jerry Davis

ANSWER: Yes

Damages to Davis horses

ANSWER: Yes

Appellant correctly states that the only evidence at trial that supports the jury's answer to Special Issue No. 1 was the brief testimony of appellee and his niece. They both stated that they heard appellant say he had apparently left his pasture gate open. Appellant later testified he did not say he had left the gate open, rather his testimony was that he was not sure how the horses got out, unless it was by a downed fence between the parties' properties. The evidence also revealed that if the horses did leave the pasture by way of an open pasture gate, they would still have to jump the cattle guard to completely escape from appellant's property. Still, it is uncontroverted that appellant's horses somehow tore down appellee's fence resulting in the injury to the mares and causing appellee to tear his Achilles tendon while chasing the stallions.

Our review of the record convinces us the jury's answer to Special Issue No. 1, concerning appellant's negligence and proximate cause of the injuries to appellee's mares, was correct. We do not agree that, as a matter of law, appellant's negligence was the proximate cause of the serious injury to appellee. The very nature of stallions should alert any owner of same that this type of horse could cause injury to persons, animals, and property when allowed around mares in heat, and thus, the evidence would allow the injury to appellee's horses to stand. We disagree, however, that the type of injury which appellee sustained would be a foreseeable consequence of appellant's negligence.

The facts in *Scurlock Oil Co. v. Birch-field*, 630 S.W.2d 674 (Tex.App.—Houston [1st Dist.] 1981, no writ) which appellant cites to us, closely resemble the type of situation in the present case. In *Scurlock*, the court said that defendant's negligence did create the situation (oil spillage) by which the injury was made possible, and the injury would not have occurred except for the oil spillage. *Id.* at 677. However, the court held that the defendant, as a person of ordinary intelligence and prudence could not have anticipated that the plaintiff (a highway worker) would sustain an injury by wrenching his back while spreading sand to cover over the defendant's oil spill. *Id.* Here, it was not foreseeable that appellee would tear his Achilles tendon while handling the stallions involved in the incident. It is also significant that appellant's stallions did not physically harm appellee as they did his mares.

Therefore, we overrule appellant's fourth point of error and a portion of points five and six concerning the jury's affirmative answer as to whether Gray's negligence was a proximate cause of the injuries to appellee's mares. We sustain the portion of appellant's points of error numbers five and six regarding the jury's affirmative answer to whether Gray's negligence was the proximate cause of appellee's personal injuries. That portion of the judgment awarding damages to appellee for appellee's personal injuries is reversed and rendered; the remainder of the judgment is affirmed. Costs are to be divided equally between the parties.