**George Bedford HOLLINGSWORTH and May Hollingsworth, Appellants,**

v.

**Pete KING and Wife, Bonnie King, Appellees.**

No. 07–90–0105–CV.

Court of Appeals of Texas, Amarillo.

April 26, 1991.

Rehearing Overruled June 25, 1991.

Robert L. Templeton & Associates, John Smithee, Amarillo, for appellants.

Gibson, Ochsner & Adkins, Amarillo, William S. Leach, Robert Kimball, for appellees.

Before DODSON, BOYD and POFF, JJ.

BOYD, Justice.

Appellants George Bedford Hollingsworth and May Hollingsworth (the Holl-ingsworths) suffered a collision between an automobile driven by them and a horse belonging to appellees Pete and Bonnie King (the Kings). In this suit, they alleged the collision was caused by the Kings' failure to properly fence the horse and lock the gates. In response to the Kings' motion arguing they had no duty to fence the horse in, the trial court summarily dismissed the Hollingsworths' suit to recover damages allegedly resulting from the collision. In one point, the Hollingsworths assert the trial court erred in its action. We agree and reverse the trial court's judgment.

■ We must begin by addressing the sufficiency of the record on appeal. The Hollingsworths point out, and the record shows, that excerpts from the deposition of Pete King, relied upon as summary judgment evidence by both parties, were not properly before the trial court. The excerpts were attached as exhibits to both the motion and the response to that motion. However, the excerpts were not authenticated by either the original certificate of the court reporters or the original affidavits of counsel.

In *Deerfield Land J. Vent. v. So. Un. Realty,* 758 S.W.2d 608, 610 (Tex.App.—Dallas 1988, writ denied), a panel of the Dallas Court of Appeals held that copies of deposition excerpts must be accompanied by a copy of the court reporter's certificate as well as the party's own original affidavit certifying the truthfulness and correctness of the copied material. The court reasoned both steps were required because the party's affidavit authenticated the duplication process, while the court reporter's certificate authenticated the contents of the deposition. *Id.* This holding has been followed by several other courts. *See, e.g., Kotzur v. Kelly,* 791 S.W.2d 254, 256 (Tex.App.—Corpus Christi 1990, no writ). Another panel of the Dallas Court recently interpreted the *Deerfield* case as "explaining a suggested method" for authenticating deposition excerpts tendered as summary judgment evidence, rather than dictating an exclusive method. *Deer Creek Ltd. v. North American Mortg.,* 792 S.W.2d 198, 201

(Tex.App.—Dallas 1990, no writ). The later case permitted the tender of deposition excerpts authenticated solely by the *original* certificate of the court reporter without the affidavit of counsel. Regardless of the approach taken, the deposition excerpts in this case lack proper authentication and may not be considered on appeal.

The proceedings in this case took place prior to the September 1, 1990 effective date of the 1990 amendments to Texas Rule of Civil Procedure 166a. Subsection (d) of the amended rule governs use of discovery products not filed with the clerk. Although one commentator has suggested that the authentication process required by *Deerfield* and its progeny may not be necessary under the amended rule,[1] we believe the better practice would be that discussed in *Deerfield, i.e.,* to authenticate deposition excerpts by attaching them as an exhibit to the motion for summary judgment, along with a copy of the court reporter's certificate and counsel's original affidavit certifying the truthfulness and correctness of the copied materials.

The Hollingsworths also point out that the record is silent concerning whether the trial court took judicial notice of the municipal ordinances of the City of Dalhart. Three pages of copies containing several ordinances were attached to the Hollingsworths' response as an exhibit. The copies were not authenticated by affidavit or otherwise, but the response stated that the Hollingsworths were relying upon the ordinances as summary judgment evidence. The Hollingsworths did not request the trial court to take judicial notice of the ordinances, and ask us to do so for the first time on appeal.

■ Although we may take judicial notice for the first time on appeal of facts which the trial court should have been authorized to notice, *Harper v. Killion,* 162 Tex. 481, 348 S.W.2d 521, 523 (1961), we are reluctant to take judicial notice when the trial court was not requested to do so and was not given the opportunity to examine the source material. *Sparkman v. State,* 519 S.W.2d 852, 855 (Tex.1975).

Rule 204 of the Texas Rules of Civil Evidence provides that a court upon its own motion "may," or upon the motion of a party "shall," take judicial notice of municipal ordinances. In the event of a request by a party, the rule provides that the party must furnish the court sufficient information to enable it to comply with the request, and further requires notice and an opportunity for hearing to all parties. Unlike Rules 201 and 202, which permit judicial notice at any stage of a proceeding, Rule 204 does not address when judicial notice may be taken.

■ The Hollingsworths' request for judicial notice is contained in their brief, and is not before the Court as a formal motion. The brief contains several pages of copies purporting to be municipal ordinances of the City of Dalhart. Two of the ordinances are crossed out with the handwritten notation "error." The copies are not authenticated by affidavit or certification of an official custodian. We are not aware of, nor have we been cited, any independent source from which to verify the ordinances. The unauthenticated copies alone are not sufficient information to enable us to comply with the Hollingsworths' request. We therefore decline to take judicial notice of the municipal ordinances. *See Hadley v. State,* 735 S.W.2d 522, 530 (Tex.App.—Amarillo 1987, pet. ref'd); *Myers v. Cliff Hyde Flying Service, Inc.,* 325 S.W.2d 841, 846 (Tex.Civ.App.—Houston 1959, no writ). Our determination that the copies are not sufficient information pretermits any discussion concerning whether Rule 204 may be applied at any stage of a proceeding, or whether a formal motion to take judicial notice is required to invoke Rule 204 on appeal.

The summary judgment evidence properly before the court consists of four affidavits and the Hollingsworths' answers to requests for admission. Relying entirely upon that evidence, we will proceed to review the Hollingsworths' sole point of error.

---

1. William V. Dorsaneo, III, 4 Texas Litigation Guide § 101.03[5] at 101–14 (Supp.1990 at 43).

■ The Supreme Court has stated the following standard for review of a summary judgment:

[T]he question on appeal, as well as in the trial court, is *not* whether the summary judgment proof *raises fact issues* with reference to the essential elements of a plaintiff's claim or cause of action, but is whether the summary judgment proof *establishes as a matter of law that there is no genuine issue of fact* as to one or more of the essential elements of the plaintiff's cause of action. (emphasis in original).

*Gibbs v. General Motors Corporation,* 450 S.W.2d 827, 828 (Tex.1970). The following rules must be applied when reviewing a summary judgment record: (1) the movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in the favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548–49 (Tex.1985).

■ The Kings flatly contend they had no duty, whether statutory or at common law, to fence their livestock because no stock law was in effect at the time and place of the accident. Therefore, they say, summary judgment was proper. We will first address the question of statutory duty in the summary judgment context.

The stock laws to which the Kings refer are contained in Chapter 143 of the Texas Agricultural Code Annotated §§ 143.001 et seq. (Vernon 1982 & Supp.1991). Subchapter E of Chapter 143, §§ 143.101 et seq., generally prohibits livestock from running at large on highways. However, § 143.101 specifically excludes numbered farm-to-market roads from the definition of "highways." The summary judgment evidence in this case shows the accident took place on Farm–to–Market Road 281; thus, the prohibitions of subchapter E are inapplicable and create no statutory duty.

However, subchapter B of Chapter 143 provides for local option elections within counties to prohibit, inter alia, horses from running at large. The affidavit of Diane Thompson, District and County Clerk for Hartley County, shows that a local option election to prevent livestock from running at large was held in Hartley County in 1934. Attached to the affidavit is a certified copy of the commissioner's court minutes stating the results of the election, and a map purporting to show the area within Hartley County affected by the election. The affected area is not clearly delineated on the map, nor does the map show the location of the accident in relation to the affected area. Viewing the summary judgment, as we must, in the light most favorable to the non-movants, the evidence is not definitive whether or not a stock law was in effect at the time and place of the accident. The Kings therefore failed to negate the existence of a statutory duty to fence their horse.

While our finding that the Kings failed to negate the existence of a statutory duty requires a remand of the case, we note the Kings further contend that, in the absence of a stock law, no common-law duty to fence livestock exists in Texas. Because that issue will again arise upon retrial, it is necessary for us to discuss it. To establish liability for negligence, a plaintiff must initially prove the existence and breach of a duty owed by the defendant to the plaintiff. *Otis Engineering Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983). Whether a duty exists under a particular set of facts and circumstances is a question of law for the court. *Oldaker v. Lock Construction Company,* 528 S.W.2d 71, 77 (Tex.Civ.App. —Amarillo 1975, writ ref'd n.r.e.).

■ In advancing their contention that no duty to fence their horses exists at common law, the Kings rely primarily upon the hoary case of *Clarendon Land, Investment & Agency Co. v. McClelland,* 89 Tex. 483, 35 S.W. 474 (Tex.1896). In that case, the Supreme Court wrote:

If the liability for damages rests upon the ground of negligence, and that negligence, at common law, is presumed from

a failure to perform the duty of restraint, then, *there being no duty of restraint of the animal placed upon the owner by the laws of this state*, there can be no negligence in permitting such cattle to run at large or upon the land of their owner, unless knowledge of the character of the stock as to fence-breaking qualities, and their condition as to disease, be brought home to the owner; and, there being no negligence, liability does not exist. (emphasis added).

*Id.* 35 S.W. at 475.

In *Molton v. Young*, 204 S.W.2d 636, 638 (Tex.Civ.App.—Amarillo 1947, no writ), this Court pointed out that at common law, an owner of domestic animals was not permitted to allow them to run at large, but was required to tether them or keep them within an enclosure, and, if he failed to do so, he was unconditionally liable for any damage which resulted from the failure to do so. However, we observed, it has long been the rule in this state that in the absence of statutory provision, "every owner of domestic animals is permitted to allow them to run at large unless they are known to him to be vicious in the matter of fence breaking or otherwise, or that they are afflicted with infectious or contagious diseases." *Id.* at 638. *See also Turner v. Big Lake Oil Co.*, 128 Tex. 155, 96 S.W.2d 221, 224 (1936); *Gray v. Davis*, 792 S.W.2d 856, 857 (Tex.App.—Fort Worth 1990, no writ); *Archer v. Storm Nursery, Inc.*, 512 S.W.2d 82, 84 (Tex.Civ.App.—San Antonio 1974, no writ); *Brite v. Pfeil*, 334 S.W.2d 596, 597 (Tex.Civ.App.—San Antonio 1960, no writ); *Gholson v. Parrish*, 92 S.W.2d 1113, 1114 (Tex.Civ.App.—Fort Worth 1936, no writ); *Carvel v. Kusel*, 205 S.W. 941, 942 (Tex.Civ.App.—San Antonio 1918, no writ); *Phillips v. Crow*, 199 S.W. 851, 852 (Tex.Civ.App.—Amarillo 1918, no writ).

Citing such cases as *Beck v. Sheppard*, 566 S.W.2d 569, 573 (Tex.1978), and *Ramey v. Richardson*, 397 S.W.2d 288, 291 (Tex. Civ.App.—Amarillo 1965, writ ref'd n.r.e.), the Hollingsworths posit that a common

law duty to fence has been recognized in this state. We do not agree. In both of these cases, the incidents occurred on U.S. highways and the focus of both court's discussion was upon the effect and implications of statutes [2] specifically dealing with such situations. Any discussion of common-law negligence was incidental and without consideration of the effect of the *McClelland* case and the myriad other cases of like ilk.

Appellant also argues that our Supreme Court in recent years has taken a "flexible, subjective, and progressive view of duty" reasoning that duty is the function of several interrelated factors with the dominant consideration being foreseeability of the risk. *See, e.g., El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987). Considering that premise, the Hollingsworths argue that it was reasonably foreseeable that a horse on the loose upon a publicly traveled roadway in and around a populated area like Dalhart, could cause mischief or damage. They suggest that as our society becomes less agrarian and more urban, and as we travel in faster automobiles with expectations of fewer road obstructions, it is obvious that the standard of care required from an owner of livestock must change with society's expectations. Therefore, they reason, in this case the trier of fact should be left free to decide whether the Kings acted in a reasonable and prudent manner considering evidence that the gate had been open on prior occasions, the necessity for a lock on the gate, the necessity of a more reliable fence and "any other considerations relevant to the issue."

Were we writing on a clean slate, the Hollingsworths' argument would be persuasive. However, in the face of all the precedential authority that, in the absence of statutory direction, no common-law duty to fence exists in this state, this intermediate appellate court may not ignore those precedents. A change of such dimension should only be made by statute or by di-

---

2. *Beck*—Tex.Rev.Civ.Stat.Ann. art. 6971a (Vernon Supp.1978); *Ramey*—then Tex.Penal Code

Ann. art. 1370a.

rection of the Supreme Court as our highest, and policy making court.

In summary, the failure of the Kings to negate the existence of a statutory duty to fence their horse requires us to reverse the judgment of the trial court and remand this cause to that court.

## ON MOTION FOR REHEARING

In their motion for rehearing, the Hollingsworths ask us to reconsider our holding that no common law duty to fence exists in this state. In regard to that contention, we remain convinced that, absent statutory requirement or the qualification stated in the opinion, the present law remains as stated by the *McClelland* Court, *i.e.*, "no duty of restraint of the animal placed upon the owner by the laws of this state." *Clarendon Land, Investment & Agency Co. v. McClelland*, 89 Tex. 483, 35 S.W. 474, 475 (1896).

The Hollingsworths also ask us to reconsider our holding that the evidence is not definitive whether or not a stock law was in effect at the time and place of the accident. We have carefully reviewed the record in the light of their request, and for the reasons set out in our original opinion, we remain convinced that, viewing the summary judgment evidence in the light most favorable to the non-movants, doubt remains whether a stock law was in effect at *any* relevant time and place. That doubt must be resolved in favor of the non-movants. That being so, we must continue to hold that the Kings failed to negate the existence of a statutory duty to fence their horse.

Accordingly, the Hollingsworths' motion for rehearing is overruled.